Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 3965 | DATE | 2/9/2001 |
| CASE TITLE | HORTON & ASSOCIATES, INC. vs. SMG, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  SMG, Inc.'s motion for summary judgment [35-1] is granted. Judgment is entered in favor of the defendant SMG, Inc. and against plaintiff Horton & Associates, Inc. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 12 2001 date docketed | 52 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 2/9/2001 | |
| | Copy to judge/magistrate judge. | FOR DOCKETING 01 FEB -9 PM 4:21 | date mailed notice | |
| SB | courtroom deputy's initials | Date/time received in central Clerk's Office | jad mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HORTON & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 3965 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| SMG, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Horton & Associates, Inc. ("Horton") sues SMG, Inc. ("SMG") for breach of contract regarding the sale of meats through a local meat distributor.[1] SMG moves for summary judgment, pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1.

## BACKGROUND

### I. The parties

Horton is an Illinois corporation licensed to do business in Illinois. Horton sells, markets, and arranges the distribution of various food and meat products to vendors and wholesalers.

SMG is a Delaware corporation licensed to do business in Illinois. SMG manufactures, markets, consolidates, packages, distributes, and sells food and meat products to vendors and wholesalers.

### II. The contract

Horton and SMG formed a business relationship in March 1995. The parties' respective roles were designated in a contract drafted by SMG. Horton arranged for SMG to distribute its products

---

[1] Horton voluntarily dismissed four other claims.

to Red Hot Chicago ("RHC"), a long-standing Horton client. RHC distributed and marketed meat products to fast food restaurants in Chicago, Illinois. In return for the business opportunity, SMG paid Horton commissions based upon the orders RHC placed with SMG. The parties' dispute essentially revolves around three paragraphs in their contract. Paragraph five provides, "This agreement may be terminated by either party giving the other party a 2 year written notice." Horton's Response to SMG's Statement of Facts, Exhibit A, ¶ 12. Paragraph 12 provides:

> This agreement *will continue on the condition that* the sausage tonnage of RHC shows a 10% increase after the second year (this means that RHC must have 1,540,000# of sales the second year) and increases at a rate of 10% over the following years. (This means that RHC must have 1,694,000# of sales the third year and 1,863,400# the fourth year . . . . .)

*Id.* Paragraph 13 provides:

> For every sales pound under 1,400,000# the first year and second year you agree to pay SMG one cent per pound. For every sales pound over 1,400,000# SMG agrees to pay you an additional one cent per pound. The limit on which money will be paid will be 400,000# on the low side and 2,400,000# on the high side.

*Id.*

### III. Execution of the contract

Between March 1995 and December 1999, SMG received and filled RHC orders and paid Horton commissions according to the terms of the contract. In January 2000, SMG stopped paying commissions to Horton, even though SMG was still receiving and filling RHC orders. SMG continues to receive and fill RHC orders without paying Horton commissions.

SMG contends RHC did not meet the 1999 sales figures on which paragraph 12 conditioned SMG's payment obligations. Horton disputes SMG's interpretation of paragraph 12. In addition,

Horton asserts SMG was still required to provide two years written notice of termination, even if the required sales levels were not maintained.

## DISCUSSION

### I. Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

### II. Breach of contract

Contract interpretation is a matter of law. *M. Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998).[2] When there are no triable issues of fact, "contract interpretation is a subject particularly suited to disposition by summary judgment." *Hickey v. A.E. Staley Manufacturing*, 995 F.2d 1385, 1389 (7th Cir. 1993).

---

[2] The parties initially disputed whether New York or Illinois law applies. SMG subsequently consented to application of Illinois law due to the similarity of contract interpretation principles. SMG Reply at p. 2. Therefore, the choice of law issue is moot.

3

Illinois generally applies a "four corners" rule in contract interpretation. *M. Bourke*, 159 F.3d at 1036. Under the "four corners" rule, there are no issues for a trier of fact if the contractual language is unambiguous. *Id.* A contract is ambiguous if it is subject to more than one reasonable interpretation. *Id.* "A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms." *Id* (citing *Flora Bank & Trust v. Czyzewski*, 164 Ill.Dec. 804, 809 (1991)) (internal citations omitted).

This court must determine whether paragraph 12 is subject to more than one reasonable interpretation. The parties dispute whether a condition precedent exists in paragraph 12. "A condition precedent is some act that must be performed ... before one party to an existing contract is obligated to perform .... If the condition is not satisfied, then any obligations of the parties under their agreement are at an end. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 (7th Cir. 1993). SMG contends its contract performance was conditioned on maintaining paragraph 12's sales figures. Horton assumes a condition precedent does not exist in paragraph 12. Horton asserts SMG was obligated to provide two years notice in order to terminate their agreement, even if the figures were not met.

Condition precedents are not favored by Illinois courts. As Horton correctly points out, courts will not construe contracts as having a condition precedent unless required to do so by plain, unambiguous language. *Riv Vil v. Tucker*, 979 F.Supp. 645, 659 (N.D. Ill. 1997). However, the condition precedent in paragraph 12 could not be clearer. Paragraph 12 begins by stating, "This agreement *will continue on the condition that* . . ." There is no question that the parties' obligations were dependent upon fulfillment of the paragraph's stated sales figures.

The parties also dispute the meaning of paragraph 12's sales requirements. Horton contends the ten percent increases were to be calculated annually at a compound rate of ten percent over an

4

initial base year sales. SMG asserts the paragraph requires a ten percent increase in sales over the prior year's actual sales. If both interpretations are reasonable, extrinsic evidence is necessary to resolve the ambiguity.

SMG's interpretation of paragraph 12 is reasonable. It is undisputed that RHC's projected sales for the first year of the sales arrangement was 1.4 million pounds. Schissler Dep. at 302; Horton Response, Ex. C. In fact, paragraph 13 imposes financial penalties for sales falling below 1.4 million pounds the first year. The paragraph's sample numbers in parentheses show ten percent more than 1.4 million in sales for the second year (*i.e.*, 1,540,000#), ten percent more than 1,540,000# for the third year (*i.e.*, 1,694,000#), and ten percent more than 1,694,000# for the fourth year. Because 1.4 million represented estimated sales for 1997, it is reasonable to interpret paragraph 12 as requiring ten percent increases in annual sales.

Horton contends the 1.4 million starting point in paragraph 12 was a hypothetical base rate and does not indicate annual sales were required to increase by ten percent. Assuming 1.4 million is a hypothetical base rate is reasonable since paragraph 13 refers to that number. Because the examples in paragraph 12 cites sales increasing by ten percent each year from an initial base of 1.4 million, Horton's interpretation of paragraph 12 is also reasonable. Accordingly, paragraph 12 is ambiguous.

Once a court finds a contractual provision ambiguous, it may consider extrinsic evidence to resolve the ambiguity. *Hickey*, 995 F.2d at 1389. Interpreting the contract as a matter of law is appropriate if the extrinsic evidence is undisputed. *Taracorp v. NL Industries*, 73 F.3d 738, 743 (7th Cir. 1996). SMG offers evidence to support its interpretation of paragraph 12. Schissler Dep. at 268-69; 300-311. Horton offers no evidence to dispute this interpretation. In fact, William Horton, president of Horton, acknowledged in his deposition that the sales quotas in paragraph 12 were not met

5

and only disputed the reason the numbers were not reached. He did not dispute the numbers themselves. Horton Dep. at 46-47. Based on this record, no reasonable jury could find that Horton disagreed with SMG's interpretation of paragraph 12. Accordingly, Paragraph 12 must be interpreted to mean ten percent increases in the prior year's actual sales, beginning in 1997, was a condition precedent to SMG's payment of commissions.[3]

Alternatively, Horton argues that it met the requirements of paragraph 12, even if SMG's interpretation is used. However, as discussed above, William Horton acknowledged in his deposition that the quotas in paragraph 12 were not met. However, his subsequent affidavit claims the sales figures in paragraph 12 were met. Horton Aff. ¶ 11. A subsequent affidavit may not be used to contradict a witness' deposition. *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000); *Piscione v. Ernst & Young L.L.P.*, 171 F.3d 527, 532-33 (7th Cir. 1999). Accordingly, William Horton's affidavit does not create an issue of material fact.

### III. SMG's alleged interference with RHC's business relationships

Horton contends even if this court agrees with SMG's interpretation of paragraph 12, SMG should still be held liable for breach of contract because it thwarted RHC's ability to meet the required sales figures by improperly selling directly to Tommy's, one of RHC's customers. SMG began selling products to Tommy's in 1997. Horton points out that in 1999, SMG sold 165,480 pounds of meat product to Tommy's. Horton contends if this amount were added to RHC's 1999 sales, the 1999 sales would have been ten percent greater than 1998 sales. However, Horton's calculations ignore the amount of meat products SMG sold directly to Tommy's in 1998. Horton fails to establish that RHC's

---

[3]Because this court finds the base year to be 1997 and not 1996, Horton's waiver argument is moot.

6

numbers would still increase by ten percent if SMG's 1998 direct sales to Tommy's were also considered.

## **CONCLUSION**

There is no issue of material fact, and SMG has established that it is entitled to judgment as a matter of law.

ENTER:

Suzanne B. Conlon
United States District Judge

February 9, 2001

7